IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| QUALITY BEAUTY SUPPLY CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 C 1996 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| SELECTIVE INSURANCE GROUP, | ) | |
| INC., and SELECTIVE INSURANCE | ) | |
| COMPANY OF AMERICA | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION & ORDER

The parties filed cross motions for summary judgment in this insurance dispute. Plaintiff Quality Beauty Supply Co. Inc. moves for summary judgment on Count I of its complaint for breach of contract and relief for declaratory judgment against Selective Insurance Company of America. (Dkt. 63); (*see also* Dkt 35 at 11). The Defendants Selective Insurance Group, Inc. and Selective Insurance Company of America move for summary judgment on each count of Quality Beauty's complaint: Counts I and II (breach of contract), Counts III and IV (estoppel), Counts V and VI (waiver), and Count VII and VIII (bad faith and fair dealing under Section 155 of the Illinois Insurance Code, 215 ILCS 5/155). (Dkts. 63, 64); (*see also* Dkt. 35 at 11-29).[1] For the reasons below, the Court grants and denies each motion in part.

## BACKGROUND

Quality Beauty occupies a modest four-unit strip mall in Des Plaines, Illinois. (Dkt. 63 at 1). It sells beauty supplies from these units. (Dkt. 35 at 10). It purchased an insurance policy from

---

[1] Each count is duplicative because Quality Beauty separated them by Defendant. (Dkt. 35 at 11-29).

1

Selective Insurance. (*Id.* at 2).[2] This policy listed one unit (of the four) for coverage: the unit at 281 S. River Rd., Des Plaines, IL 60016-3427. (Dkt. 35-1 at 17-18) ("Unit 1"). A storm with intense rain and wind on November 22, 2021, damaged one of the four units in Quality Beauty's strip mall—the unit two doors down at 301 S. River Rd., Des Plaines. (Dkt. 63 at 1) ("Unit 2"). This storm damaged $390,460.71 worth of Quality Beauty's inventory that was stored inside Unit 2. (Dkt. 63 at 7); (Dkt. 81 at 7).

The policy states that Selective Insurance "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (Dkt. 35-1 at 109, §I.A). The premise described in the Declaration is just Unit 1. (*Id.* at 17). The policy states that "Covered Property includes Buildings as described under Paragraph a." and "Business Personal Property as described under Paragraph b." (*Id.*, §I.A.1). The parties' dispute turns on the interpretation of Paragraph b., the "Business Personal Property" provision and whether it covers the damaged inventory in Unit 2.

> Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater . . . .

(*Id.*, §I.A.1.b) ("Business Personal Property Provision"). The policy was amended to change "[a]ll references to 100 feet . . . to 1,000 feet." (*Id.* at 206, §I.1). There is another provision at issue. This provision relates to "unnamed premises." It is titled "Personal Property At Unnamed Premises - Within the Coverage Territory" and provides that:

> You may extend the insurance provided by this Coverage Form to apply to direct physical loss or damage to your Business Personal Property and Personal Property of Others while at an "unnamed premises" caused by or resulting from a Covered

---

[2] Quality Beauty agreed to dismiss its claim against Selective Insurance Group, Inc. and proceed solely against Selective Insurance Company of America. (Dkt. 69 at 3). The Court dismisses the complaint as to Selective Insurance Group, Inc. and will therefore refer to Selective Insurance Company of America as "Selective Insurance." *See infra* at 19.

Cause of Loss and for direct loss or damage caused by flood, earthquake or landslide.

For this Coverage Extension, "unnamed premises" means locations:

1. Owned, leased or operated by you; or
2. Not owned, leased or operated by you, where Your Business Personal Property or Personal Property of Others in your care, custody or control is located, including fairs, trade shows or exhibitions;

that are within the Coverage Territory and not described in the Declarations….

(*Id.* at 227) ("Unnamed Premises Provision"). The policy coverage limit for damaged Business Personal Property subject to the Unnamed Premises Provision is $25,000. (*Id.* at 94). As relevant here, the "Coverage Territory" is the "United States of America" or worldwide. (*Id.* at 69, 86, 137, 155, 179, 227, 252, 267, 269).

## LEGAL STANDARD

"Summary judgment is appropriate when the moving party shows 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Giovannelli v. Walmart Inc.*, 164 F.4th 1052, 1054 (7th Cir. 2026) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant "bears the burden of showing that summary judgment is appropriate" and that these requirements have been met. *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021). The movant "may discharge this responsibility by showing that there is an absence of evidence to support the nonmoving party's case." *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Illinois*, 908 F.3d 290, 295 (7th Cir. 2018) (quotes omitted); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To overcome a motion for

3

summary judgment, the "nonmoving party must provide specific material facts showing there is a genuine issue for trial." *Tech. Sec. Integration, Inc. v. EPI Techs., Inc.*, 126 F.4th 557, 560 (7th Cir. 2025); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party who fails to produce evidence sufficient to show an element essential to his case on which he bears the burden cannot survive a summary judgment motion." *Gills v. Hamilton*, 164 F.4th 640, 644 (7th Cir. 2026).

## DISCUSSION

### I.     The Insurance Policy

"Federal courts sitting in diversity apply the law of the forum state when interpreting contracts." *Great W. Cas. Co. v. Nationwide Agribusiness Ins. Co.*, 167 F.4th 448, 455 (7th Cir. 2026) (citing *Hess v. Biomet, Inc.*, 105 F.4th 912, 917 (7th Cir. 2024)). "The parties agree that Illinois law governs this contract dispute, so [the Court will] analyze their arguments according to Illinois law." *Id.*

"When construing policy language, Illinois courts apply the same rules applicable to contract interpretation." *Id.* (citing *Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 209 (2021)). "The 'primary objective is to ascertain and give effect to the intent of the parties, as expressed in the policy language.'" *Id.* (quoting *Acuity v. M/I Homes of Chicago, LLC*, 234 N.E.3d 97, 105 (2023)). The Court must "'look to the contract as a whole,' adopting the most natural and reasonable reading of the contract." *Id.* (quoting *Land of Lincoln Goodwill Indus., Inc. v. PNC Fin. Servs. Grp., Inc.*, 762 F.3d 673, 679 (7th Cir. 2014) (applying Illinois law)).

"Policy terms that are clear and unambiguous will be enforced as written unless doing so violates public policy." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Elmore*, 181 N.E.3d 865, 871 (2020)). "Ambiguity exists only where the policy language is susceptible to more than one

4

reasonable interpretation. . . . Reasonableness is the cornerstone, as policy terms will not be deemed ambiguous simply because a term is undefined within the policy or because the parties can suggest creative possibilities for its meaning." *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Elmore*, 181 N.E.3d 865, 871 (2020)). "For it is the court's job whenever possible to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous. . . . But this principle is not absolute. . . . It is understood that some redundancy in insurance contracts is normal, but construing an endorsement to be completely superfluous is not." *Id.* (cleaned up).

"Under Illinois law, which applies here, the interpretation of a contract presents a question of law." *Daniels v. Hughes*, 147 F.4th 777, 784 (7th Cir. 2025). "Whether a contract is ambiguous or clear is [also] a question of law." *In re Marriage of Spangler & DeFauw*, 2025 IL App (2d) 240303, ¶ 20; *In re Harley-Davidson Aftermarket Parts Mktg., Sales Pracs. & Antitrust Litig.*, 151 F.4th 922, 931 (7th Cir. 2025). "The elements of a breach of contract claim are (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by defendant, and (4) resultant injury to the plaintiff." *Zahdan v. Frontline Bus. Enter. Inc.*, 2024 IL App (1st) 221351, ¶ 31.

### a. The Business Personal Property Provision

Quality Beauty contends that the policy covers Unit 2—even though it is not specifically listed in the policy's Declaration—because it is within 1,000 of Unit 1. (Dkt. 63). In other words, because the insurance policy identifies Unit 1 in the Declaration—and Unit 2 is within 1,000 feet of Unit 1—the damage to the inventory in Unit 2 is covered. (*Id.*) Selective Insurance's position is that the 1,000-foot extension does not cover the inventory inside Unit 2 because the damaged goods were not "in the open" as the Business Personal Property Provision requires. (Dkt. 64).

Selective Insurance further states that, because Unit 2 was not named in the policy, it is an "Unnamed Premise" subject to the Unnamed Premises Provision that caps coverage at $25,000. (*Id.*) The parties agree that this issue of contract interpretation is an issue of law for the Court to decide.

The insurance policy, the Business Personal Property Provision, and the Unnamed Premises Provision are unambiguous. The Business Personal Property Provision states that Selective Insurance will cover "Business Personal Property" under three conditions. When it is:

1. located in or on the buildings or structures at the described premises or

2. in the open (or in a vehicle) within 1,000 feet of the buildings or structures or

3. within 1,000 feet of the premises described in the Declarations

(Dkt. 35-1, at 109, §I.A.1.b).[3] It is undisputed that the damaged inventory (i.e., the Business Personal Property) in Unit 2 was "within 1,000 feet of the premises described in the Declarations" (i.e., Unit 1). (Dkt. 35-1 at 17); (Dkt. 81 at 2). It is undisputed that "the replacement cost value of Quality Beauty's damaged business personal property was $390,460.71." (Dkt. 81 at 7). It is further undisputed that the damage "constituted a 'covered cause of loss'" under the policy and that, barring this dispute, "Quality Beauty would be entitled to the replacement cost value of the damaged business personal property if no other coverage disputes existed." (*Id.*) Given these undisputed facts and Quality Beauty's $1,158,610 coverage limit, Quality Beauty is entitled to its full damages. (Dkt. 35-1 at 91).

Naturally, Selective Insurance does not see it that way. Selective Insurance interprets the Business Personal Property Provision as applying to only two—not three—conditions. (Dkt. 70 at 5-11). Selective Insurance finds coverage under the Business Personal Property Provision "only

---

[3] All references to 100 are changed to 1,000 without brackets for ease of reading and clarity.

when it is either (1) 'in or on the buildings or structures at the described premises,' or (2) 'in the open (or in a vehicle) within 1,000 feet of the buildings or structures or within 1,000 feet of the premises described in the Declarations, whichever is greater.'" (*Id.* at 6) (quoting Dkt. 66, ¶ 34). This is not a proper reading of the provision. This collapses the second and third conditions together. That is improper because the coordinating conjunction "or" is between them. The provision provides three conditions when coverage will apply: "Business Personal Property located in or on the buildings or structures at the described premises **or** in the open (or in a vehicle) within 100 feet of the buildings or structures **or** within 100 feet of the premises described in the Declarations." (Dkt. 35-1 at 109) (emphasis added).

The provision is constructed using a series of parallel prepositional phrases modifying the word "located." Each of the three conditions is joined by "or." This makes each phrase grammatically independent. Under normal rules of parallel construction and proximity, the second condition starting with "in the open (or in a vehicle)" modifies only the phrase immediately following it: "within 100 feet of the buildings or structures." The structure signals this because the third condition begins anew with a third "or." There is no reason to collapse the second and third conditions and to do so is improper. *Thompson v. Gordon*, 241 Ill. 2d 428, 441 (2011) ("If the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning."); *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363 (2006) ("If the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written.").

To be sure this provision is a bit redundant, but it is not ambiguous. "It is understood that some redundancy in insurance contracts is normal[.]" *Great W. Cas. Co. v. Nationwide Agribusiness Ins. Co.*, 167 F.4th 448, 455 (7th Cir. 2026). Selective Insurance contends that "the

7

phrases 'in or on the buildings' and 'in the open' decide the coverage dispute here." (Dkt. 70 at 6). Selective Insurance asks the Court to ignore the third condition—"within 100 feet of the premises"—and the plain language of the contract. The Court declines to do so. *United States v. Zanders*, 2025 WL 1672253, at *2 (7th Cir. June 13, 2025); *Palmquist v. Livingston*, 2024 IL App (2d) 230219-U, ¶ 42; *Zahdan*, 2024 IL App (1st) 221351, ¶ 35.

Selective Insurance also claims that "[u]nder Plaintiff's view, any property located within a 1,000-foot radius of the described premises—even if housed in a separate, roofed building with its own address and lease—is automatically entitled to full coverage." (Dkt. 70 at 6). Swap "any property" with "Business Personal Property" and that is just about exactly what the plain language dictates—and what Selective Insurance agreed to. The provision clearly states that Selective Insurance "will pay for direct physical loss of or damage to Covered Property" which "includes . . . Business Personal Property as described under Paragraph b." which covers "Business Personal Property located . . . within 1,000 feet of the premises described in the Declarations." (Dkt. 35-1 at 109). Quality Beauty's damaged inventory—its Business Personal Property—was within 1,000 feet of Unit 1— "the premises described in the Declarations." (*Id.*) Selective Insurance's attempt to collapse the second condition concerning property "in the open (or in a vehicle)" into the third condition is improper. "A contract must be construed as a whole, viewing each provision in light of the other provisions." *Thompson*, 241 Ill. 2d at 441. Adopting Selective Insurance's interpretation would violate Illinois law by nullifying the third condition of the Business Personal Property Provision. It would also render the elliptical subordinate clause "whichever distance is greater" superfluous as that comparative selection phrase expressly hinges on the second and third conditions concerning the 1,000-foot provision. (Dkt. 35-1 at 109).[4] "A court will not interpret a

_____

[4] Indeed, the phrase lacks an explicit subject because it is understood from the context that it is referring back to the two previously stated values in conditions two and three.

contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." *Thompson*, 241 Ill. 2d at 442.

Selective Insurance further asserts that Quality Beauty's interpretation would lead to "absurd" results. (Dkt. 70 at 7-10). It also argues that "[t]his construction renders the phrase 'in the open meaningless.'" (*Id.* at 7). It states that "[u]nder Plaintiff's reading, any structure situated within a 1,000-foot radius of the covered premises would be swept into coverage, regardless of whether that property was located 'in or on the building' or 'in the open.'" (*Id.* at 8); (*see also id.* at 10). Quality Beauty's interpretation leads to neither absurd results nor "in the opening" being rendered meaningless. Suppose Quality Beauty left its inventory in Unit 1. That is covered because it is "in" the "buildings or structures at the described premises." (Dkt. 35-1 at 109). Consider if Quality Beauty threw its inventory in the open behind its store and also in a vehicle parked out back, if that inventory is within 1,000 feet of Unit 1 (i.e., "the buildings or structures"), that too is covered. (*Id.*) Now say Quality Beauty placed its inventory in a completely enclosed black storage box behind the store, but still within 1,000 feet of Unit 1, why would that not be protected under the policy? Selective Insurance offers no cogent reason. Working in reverse, inventory in that black storage box does not qualify for condition one because it is not "in" Unit 1. It also does not satisfy condition two because it is certainly not "in the open" "or in a vehicle"—it is in a fully enclosed and sealed box. The only natural reading is that condition three covers this scenario where Business Personal Property is within 1,000 feet of Unit 1 but is neither in Unit 1 nor out in the open. Thus, Unit 2—where Quality Beauty stores all of its business inventory—is covered under condition three. (*Id.*)

Moreover, picture the location where this dispute comes from. It is a modestly sized four-unit strip mall. The original policy protected only 100 feet. 100 square feet is about half of a single-

car parking space. It is not "absurd" but *rational* for Quality Beauty to ensure that the policy it is paying for actually covers the property it seeks to protect. It is undisputed that Quality Beauty desired insurance coverage for each of the four units in its strip mall. (*See* Dkt. 81 at 2-3). None of the cases Selective Insurance relies on in opposition are binding or persuasive. Each has distinguishable contractual language concerning two—not three—conditions, and so Selective Insurance's reliance on them to bootstrap its reading that there are only two conditions remains unavailing. (*Id.* at 7-9); (Dkt. 65 at 6-10); (Dkt. 70 at 9, 11). Selective Insurance's position amounts to the broad contention that a simple catchall provision in the policy is prohibited merely because it fills in coverage gaps. That does not withstand scrutiny. When "the words used in the policy, given their plain and ordinary meaning, are unambiguous, they must be applied as written." *Valley Forge*, 223 Ill. 2d at 363.

Even assuming *some* ambiguity, that does not save Selective Insurance. The parties amended the contract to extend the coverage from 100 feet to 1,000 feet. (Dkt. 35-1 at 206) ("All references to 100 feet are changed to 1,000 feet."); (Dkt. 78 at 14); (Dkt. 81 at 2-3). "[W]hen parties agree to and insert language into a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect." *Thompson*, 948 N.E.2d at 47. "[I]f the words used in the policy are ambiguous, they will be strictly construed against the drafter." *Valley Forge*, 223 Ill. 2d at 363; *Truck Ins. Exch. v. Ulman*, 2023 IL App (1st) 220804, ¶ 26 ("words susceptible to multiple meanings are ambiguous and will be strictly construed against the insurer in favor of the insured").

### b. The Unnamed Premises Provision

Selective Insurance posits that the Unnamed Premises Provision is the operative provision. (Dkt. 70 at 11-13); (Dkt. 65 at 9-10); (Dkt. 35-1 at 227). Selective Insurance states that "[i]t is

undisputed that, at the time of the loss, the damaged Business Personal Property was located at the Unnamed Premises, 301 S. River Rd." (*Id.* at 12). It continues that "[t]he Unnamed Premises was neither scheduled nor disclosed to Selective before the date of loss." (*Id.*) (citing Dkt. 66, ¶¶ 10, 22). It only follows, Selective Insurance concludes, that "the property at issue does not qualify for coverage under the Business Personal Property grant applicable to the Named Premises." (*Id.*)

This position misunderstands the language and purpose of the contract and fails to consider it as a whole. This is an insurance contract for Quality Beauty's business operations. Like most business insurance contracts, its purpose is to ensure that Quality Beauty will be protected from losses should some event arise that impacts Quality Beauty's business. The Unnamed Premises Provision is not applicable here. It serves a distinct purpose. It is designed to cover Quality Beauty's Business Personal Property when in different "locations" but not in transit. (Dkt. 35-1 at 227). The Unnamed Premises Provision specifically identifies "locations" that qualify as "unnamed premises" including "fairs, trade shows or exhibits." (*Id.* at 227). This is a commonplace commonsense provision that contemplates that businesses take their products to different locations, either to sell them, display them, or temporarily store them. The language identifying "fairs, trade shows or exhibits" expresses that intent. (*Id.*) The Unnamed Premises Provision's role comes into focus when reading the policy as a whole. The section immediately preceding it is titled "Property in Transit (including F.O.B. Shipments)." (*Id.*) So that section covers Quality Beauty's Business Personal Property in transit; and the next provision, the Unnamed Premises Provision, covers it when it is brought to varying locations, such as trade shows and the like.

Selective Insurance states that "[i]f coverage were available under the broader 'everything within 1,000 feet of the Named Premises' argument advanced by Plaintiff, this separate Unnamed Premises extension—including its specific rationale and distinct limit—would serve no purpose."

(Dkt. 70 at 12). The Unnamed Premises Provision would not "serve no purpose"—it would serve its very purpose: protecting the Business Personal Property when it is in unnamed locations more than 1,000 feet from the location identified in the Declaration. This is why the Unnamed Premises Provision predicates its coverage on the Business Personal Property being "within the Coverage Territory and not described in the declarations." (Dkt. 35-1 at 277). The Coverage Territory is the entire "United States of America" or worldwide. (*Id.* at 69, 86, 137, 155, 179, 227, 252, 267, 269).

Selective Insurance maintains that it is impossible for Business Personal Property stored in an Unnamed Premise within 1,000 feet of Unit 1 to be covered under the Business Personal Property Provision. It asserts that the 1,000-foot provision is inapplicable to Unnamed Premises, such as Unit 2, because Unit 2 is a standalone property with its own address. (Dkt. 70 at 6, 11); (Dkt. 65 at 10-11). Because of this, Unit 2 is bound solely by the Unnamed Premises Provision, it argues (*Id.*) Were it any other way, Selective Insurance contends that the 1,000-foot provision would improperly "expand[] coverage to all property regardless of where or how it is stored." (*Id.* at 11).

Under Selective Insurance's interpretation, the parties' 1,000-foot amendment would carry no meaning. The Court cannot accept such an interpretation. The parties amended the policy to expand coverage by an additional 900 feet. The purpose of the parties' amendment was for Quality Beauty to expand its coverage—not for it to have no effect. The Court "will not strain to find an ambiguity where none exists, nor will [it] consider an interpretation that is unreasonable or leads to absurd results." *Left Turn Invs., LLC v. Three Four Glob. Invs., LLC*, 2023 IL App (1st) 220764-U, ¶ 47 (quoting *Sweet Berry Café, Inc. v. Society Insurance, Inc.*, 2022 IL App (2d) 210088, ¶ 34)); *McGinley Partners, LLC v. Royalty Props., LLC*, 2018 IL App (1st) 171317, ¶ 66 ("A term is not ambiguous 'merely because the parties can suggest creative possibilities for its meaning.'")

(quoting *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 417, (2006)). There is a simple way to harmonize each provision without rendering any superfluous: the Unnamed Premises Provision covers Quality Beauty's Business Personal Property in locations not described in the Declaration that are more than 1,000 feet from Unit 1 but still within the Coverage Territory. (*Compare* Dkt. 35-1 at 109 *with* Dkt. 35-1 at 227). Any Business Personal Property that falls within 1,000 feet of Unit 1 is subject to the three conditions identified in the Business Personal Property Provision—even if in an unnamed premise. *Great W. Cas. Co.*, 167 F.4th at 455 ("it is the court's job whenever possible to give meaning to every provision of the contract and avoid a construction that would render a provision superfluous").

The Court therefore grants Quality Beauty's motion for summary judgment on Count I of its Amended Complaint and denies Selective Insurance's motion for summary judgment on Count I of Quality Beauty's Amended Complaint. (Dkt. 63); (Dkts 64, 65).

## II.      Estoppel

Selective Insurance moves for summary judgment on Quality Beauty's estoppel claim. (Dkt. 65 at 11-14); (Dkt. 35 at 14-17). Selective Insurance asserts that "Illinois law does not recognize promissory estoppel where there is an express contract between the parties." (*Id.* at 12). It further asserts that Quality Beauty cannot rely on estoppel "to create or enlarge insurance coverage beyond what the Policy provides." (*Id.*) Selective Insurance also argues that monetary relief "is not a proper remedy for estoppel." (*Id.* at 13).

It is unclear from the face of Quality Beauty's complaint whether its estoppel claim is for promissory estoppel or equitable estoppel. (Dkt. 35 at 14-17). Quality Beauty alleged that Selective Insurance should be "estopped from exercising the right to disclaim insurance coverage under its insurance policy with Quality Beauty and/or is otherwise estopped from asserting any insurance

13

policy defenses, exclusions and/or endorsements that would otherwise serve to disclaim insurance coverage." (*Id.* 35 at 17). In Quality Beauty's response to Selective Insurance's motion for summary judgment, it mentions "equitable estoppel" and contends that there are "highly fact-centric analyses based on the conduct of representatives of both the insurer and insured in the insurance context" and therefore "questions of . . . estoppel are left to the trier of fact where the material facts are in dispute or where reasonable people might draw different conclusions from the evidence." (Dkt. 69 at 11).

Whether under promissory estoppel or equitable estoppel, Quality Beauty's claim fails as a matter of law. There is an express insurance contract between the parties. This extinguishes Quality Beauty's estoppel claim (if for promissory estoppel). "Application of promissory estoppel is proper only in the absence of an express agreement." *Matthews v. Chicago Transit Auth.*, 2016 IL 117638, ¶ 92. There is an apparent split of authority whether Illinois law recognizes equitable estoppel as a standalone cause of action or merely a defense.[5] At any rate, Estoppel carries another meaning in the insurance context. "Although the terms 'waiver' and 'estoppel' are sometimes conflated, particularly in the insurance context, they are actually distinct legal doctrines." *Lumbermen's Mut. Cas. Co. v. Sykes*, 384 Ill. App. 3d 207, 218 (2008). "Estoppel, in the insurance context, requires the insured to establish the following: (1) that he was misled by the acts or

---

[5] *Compare Friedman & Friedman, Ltd. v. Basic*, 2012 IL App (1st) 11-2642-U, ¶ 21 ("Equitable estoppel is traditionally raised as a defense to prevent the other party from asserting rights it may otherwise have against the party who raises the defense. . . . However, this court has also held that equitable estoppel can be an independent cause of action, under the same theory as promissory estoppel.") *and Bear Valley Partners v. McDonald's Corp.*, 2024 IL App (2d) 230245-U, ¶ 73 *with Matthews v. Chi. Transit Auth.*, 51 N.E.3d 753, 780 n.11 (Ill. 2016) ("[p]romissory estoppel is distinguished from equitable estoppel in that the former allows a party to pursue a claim for damages based on breach of a gratuitous promise of future conduct, and the latter is used as a defense to preclude a party from denying a representation of past or existing fact."); *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 906 N.E.2d 520, 526 (Ill. 2009); *Geddes v. Mill Creek Country Club, Inc.*, 196 Ill. 2d 302, 312 (2001); *see also Telebrands Corp. v. My Pillow, Inc.*, 2021 WL 4147695, at *2 (N.D. Ill. Sept. 13, 2021) ("While this district has conflicting guidance on whether equitable estoppel is an affirmative claim in Illinois and both parties largely ignore the other's caselaw, the more recent caselaw holding that equitable estoppel is an affirmative defense that prevents a party from asserting a particular claim, not a cause of action, is more persuasive.").

14

statements of the insurer or its agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance." *Id.* at 224 (quotes omitted).

The Court need not determine whether equitable estoppel in the insurance context constitutes an independent cause of action under Illinois law because, even viewing the facts in the light most favorable to Quality Beauty, it has failed to demonstrate a genuine issue of material fact. Nor must the Court address each element of a claim for equitable estoppel because there is no evidence in the record that Quality Beauty was misled or that Selective Insurance misrepresented, concealed, or misled any material facts.

Quality Beauty's estoppel arguments boil down to the allegation that Ms. Murphy[6] misled Quality Beauty that it was "fully covered" for its damaged inventory. (Dkt. 69 at 12-13). No evidence supports this. None of Ms. Murphy's testimony shows misleading conduct. (*See, e.g.*, Dkt. 66-3 at 26) ("Q: Did you ever tell David that all of the business personal property would be covered? A: No. Q: Did you ever tell David that only a portion of the business personal property would be covered? A: No."). Quality Beauty's documentary evidence is one line from one log note where Ms. Murphy wrote: "Coverage is afforded due to the cause of loss being wind causing a storm created opening resulting in ensuing damages to our PH's BPP." (Dkt. 66-2 at 8); (Dkt. 69 at 12-13). Ms. Murphy denies that this meant that she told—much less misled—Quality Beauty that it was entitled to full coverage. (Dkt. 66-3 at 16-19). Furthermore, reviewing the entirety of the log notes, this was a preliminary entry and further information was needed. (Dkt. 66-2 at 8-73) (showing hundreds of log entries as Selective Insurance reviewed the claim); (*see also id.* at 72-

---

[6] Quality Beauty sometimes refers to Ms. Murphy as Ms. Shipler. (*Compare* Dkt. 69 at 13 *with* Dkt. 66, ¶ 12).

73).[7] Other than this, Quality Beauty relies solely on the deposition testimony of Mr. Strauss and Ms. Weinstein, Quality Beauty's Vice Presidents, who said that Ms. Murphy said that Quality Beauty is fully covered. (Dkt. 69 at 12-13) (citing deposition transcripts). While there is a dispute about who said what, there is no genuine issue of material fact concerning any misleading conduct or that Quality Beauty was misled. This testimony is hearsay and cannot create a genuine issue of material fact. "The party opposing summary judgment must offer admissible evidence in support of his version of events, and hearsay evidence does not create a genuine issue of material fact." *State Farm Life Ins. Co. v. Smith*, 2024 WL 1463422, at *2 (N.D. Ill. Apr. 4, 2024) (citing *McKenzie v. Ill. Dep't of Transp.,* 92 F.3d 473, 484 (7th Cir. 1996)); *Thomas v. Chicago Teachers' Pension Fund*, 2025 WL 815614, at *2 (N.D. Ill. Mar. 13, 2025), *aff'd*, 2026 WL 165448 (7th Cir. Jan. 21, 2026) ("hearsay [is] incapable of creating a genuine issue of material fact") (citing *Winskunas v. Birnbaum,* 23 F.3d 1264, 1268 (7th Cir. 1994)).

The Court therefore grants Selective Insurance's motion for summary judgment as to Count III of Quality Beauty's Amended Complaint for estoppel. (Dkt. 65 at 11-14); (Dkt. 35 at 14-17).

### III.  Waiver

Selective Insurance moves for summary judgment on Quality Beauty's waiver count for the same reasons it asserted for its estoppel arguments. (Dkt. 65 at 14). Quality Beauty responds in opposition with the same reasons it presented for its estoppel arguments. (Dkt. 69 at 11-13).

"[W]aiver is 'an equitable principle invoked to further the interests of justice whenever a party initially relinquishes a known right or acts in such manner as to warrant an inference of such relinquishment." *Lumbermen's*, 384 Ill. App. 3d at 219 (quoting *Mollihan v. Stephany,* 52 Ill. App.

---

[7] These log notes were also not available to Quality Beauty until this litigation and so cannot form the basis for Quality Beauty being misled. Furthermore, this statement could readily mean that Quality Beauty was only entitled to the $25,000 worth of coverage.

3d 1034, 1041 (1977)). "It is a unilateral act, and detrimental reliance by the insured is not required." *Id.* "Waiver may be either express or implied; 'implied waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it.'" *Id.* (quoting *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 326 (2004)); *Kenilworth Insurance Co. v. McDougal*, 20 Ill. App. 3d 615, 620 (1974). "Strong proof is not required to show a waiver of a policy defense. Rather, the insured need only demonstrate such facts as would make it unjust, inequitable or unconscionable to allow the insurer to assert the defense." *Lumbermen's*, 384 Ill. App. 3d at 220 (quotes omitted). "[W]hen the material facts are undisputed and only one reasonable inference may be drawn from them, waiver and estoppel may be determined as a matter of law." *Id.*

There is no genuine issue of material fact that Selective Insurance did not waive its policy defense that it was not liable for the full amount of loss Quality Beauty sustained. Much the opposite. Selective Insurance's log entries show an ongoing and detailed investigation into the claim and an active effort to receive all the necessary information before making its final determination that it was only required to cover $25,000 worth of the damage. (*See* Dkt. 66-2 at 8-73). Quality Beauty's contentions that Ms. Murphy initially told Quality Beauty that they would be fully covered and so Selective Insurance waived its policy defense that it is not liable for the full amount of coverage fail for the same reasons the Court discussed above for estoppel. *See supra* at 13-16. The Court finds nothing "unjust, inequitable or unconscionable to allow [Selective Insurance] to assert the defense" it raised in its motion. *Lumbermen's*, 384 Ill. App. 3d at 220.

The Court therefore grants Selective Insurance's motion for summary judgment as to Count V of Quality Beauty's Amended Complaint for waiver. (Dkt. 65 at 11-14); (Dkt. 35 at 20-22).

17

IV.     **Section 155 Claim**

Selective Insurance moves for summary judgment on Quality Beauty's count for bad faith and unfair dealing under 215 ILCS 5/155. (Dkt. 65 at 14-15). The Court need not address the parties' arguments on this claim because "it is not a claim at all." *Ruebe v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 841 (N.D. Ill. 2020). "The Illinois statute creates remedies, not a cause of action." *Id.*; (citing *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 770 F.3d 676, 679 (7th Cir. 2014)). Indeed, "section 155 is procedural rather than substantive," "it provides a remedy in a specified type of 'action' (case); it does not create a cause of action; it presupposes rather than authorizes a suit." *Hennessy Indus., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 770 F.3d 676, 679 (7th Cir. 2014); *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 519 (7th Cir. 2025) (holding same); *Creation Supply, Inc. v. Selective Ins. Co. of the Se.*, 995 F.3d 576, 579 (7th Cir. 2021) (holding same). Thus, the Court grants Selective Insurance's motion for summary judgment and dismisses Quality Beauty's "count" under section 155. (Dkt. 65 at 14-15); (Dkt. 35 at 24-26).

This does not fully resolve the issue because "section 155 supplements the remedies otherwise available in an action for breach of contract[.]" *Wolf*, 132 F.4th at 519. The Court has found that Selective Insurance breached its agreement with Quality Beauty and owes Quality Beauty the full amount of damages it has suffered under the policy. The Court must consider whether Selective Insurance's conduct was "vexatious and unreasonable" such that it would be proper to "allow as part of the taxable costs in the action reasonable attorneys fees." 215 ILCS 5/155. "'An insurer's conduct is not vexatious and unreasonable if: (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4)

18

the insurer takes a reasonable legal position on an unsettled issue of law.'" *Scottsdale Indem. Co. v. Vill. of Crestwood*, 784 F. Supp. 2d 988, 998 (N.D. Ill. 2011), *amended in part* (June 13, 2011), *aff'd*, 673 F.3d 715 (7th Cir. 2012) (quoting *Citizens First Nat'l Bank v. Cincinnati Ins. Co.,* 200 F.3d 1102, 1110 (7th Cir. 2000)). "Whether an insurer's conduct was vexatious and unreasonable is a question for the Court's determination, not a jury." *Id.* (citing *Horning Wire Corp. v. Home. Indem. Co.*, 8 F.3d 587, 590 (7th Cir. 1993)). Quality Beauty cannot satisfy any of these elements. Selective Insurance's position was reasonable and it "asserted a legitimate policy defense." *Id.* There is no evidence of vexatious or unreasonable conduct by Selective Insurance in the record. *Id.* Selective Insurance is therefore entitled to summary judgment on Count VII. (Dkt. 65 at 14-15); (Dkt. 35 at 24-26).

## V. Selective Insurance Group, Inc.

Selective Insurance Group, Inc. moves for summary judgment on all counts that Quality Beauty brought against Selective Insurance Group, Inc. (Dkt. 65 at 15-16). Quality Beauty agreed to drop its claims against Selective Insurance Group, Inc. (Dkt. 69 at 3). The Court therefore grants Selective Insurance Group, Inc.'s motion for summary judgment for all counts against Selective Insurance Group, Inc. (Dkt. 65 at 15-16); (Dkt. 35 at Counts II, IV, VI, VIII).

## CONCLUSION

The Court grants Quality Beauty's motion for summary judgment in part as it relates to Selective Insurance but denied as it relates to Selective Insurance Group, Inc. (Dkt. 63). The Court grants in part and denies in part Selective Insurance's motion for summary judgment, denying it as to Quality Beauty's breach of contract count, but granting it as to Quality Beauty's counts for estoppel, waiver, and bad faith and unfair dealing under 215 ILCS 5/155. (Dkt. 64). Selective Insurance is hereby ordered to pay Quality Beauty the full replacement cost value of Quality

19

Beauty's damaged business personal property of $390,460.71. (Dkt. 81 at 7); (Dkt. 63 at 15).[8] The Court enters final judgment in accordance with Federal Rule of Civil Procedure 58 for Quality Beauty.

_____

Virginia M. Kendall
United States District Judge

Date: March 23, 2026

---

[8] Quality Beauty sought an evidentiary hearing to determine the value of the damaged inventory, but the Court denies this as moot. (Dkt. 63 at 15). It is undisputed that the value of the damaged inventory is $390,460.71, and the Court has ordered Selective Insurance to pay $390,460.71. (Dkt. 81 at 7).